Christopher N. Coyle, OSB No. 073501
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail: ccoyle@sussmanshank.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re                                                         )    Case No. 26-30815-thp7
                                                             )
William A. Farnum and                        )    DEBTORS' RESPONSE TO TRUSTEE'S
Elizabeth F. Farnum                            )    OBJECTION TO CLAIMED
                                                             )    EXEMPTIONS
                      Debtors.                      )
                                                             )
_____ )

Debtors William. A. Farnum and Elizabeth F. Farnum ("**Debtors**"), by and through counsel, hereby RESPOND to the Trustee's Objection to Claimed Exemptions [Docket No. 25] (the "**Objection**") filed by the chapter 7 trustee ("**Trustee**"); in response, Debtors state as follows:

1.    The above-captioned bankruptcy case was filed on March 11, 2026 (the "**Petition Date**").

2.    The Trustee "has the burden of proving that an exemption was not properly claimed." Fed. R. Bankr. P. 4003(c). The objector must show by a preponderance of the evidence that the debtor has not properly claimed the exemption. *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 17 (9th Cir. BAP 2003). A claimed exemption is "presumptively valid." *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The objecting party "has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption." *Id*. (*citing In re Lester*, 141 B.R. 157, 161 (S.D. Ohio 1991)). Only if rebutted does the burden then shifts to the debtor to produce "unequivocal evidence to

**Page 1 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

demonstrate that the exemption is proper. The burden of persuasion, however, always remains with the objecting party." *Id*. (internal citations omitted).

3. The Oregon Revised Statutes (ORS) provides for certain exemptions of "disposable earnings." ORS 18.385. Earnings are not limited to "wages" as posited by the Trustee. Instead, the ORS defines "Earnings" to include "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program." ORS 18.375(2).

4. That exemption extends to funds "deposited in an account in a financial institution as long as the exempt funds are reasonably identifiable." ORS 18.348(1). This exemption "is not affected by the commingling of exempt and nonexempt funds in an account." ORS 18.348(3).

5. The Wells Fargo 9903 account had a balance of $4,429.30 on the Petition Date. By application of "first in, first out accounting principles" (as directed by ORS 18.348(4)), we find this amount traceable to (1) transfer of $1,800 from Fidelity 3593, and (2) deposit of $6,009.75 direct deposit from "Nike Inc Payroll". The Fidelity 3593 is the account holding the Debtors' Nike ESPP holdings. The Nike ESPP is a component of William Farnum's total compensation package from his employer, Nike, Inc. – it is a form of equity compensation. The direct deposit of his wages is, obviously, wages.

6. The Wells Fargo 0520 account had a balance of $322.01 on the Petition Date. The Objection does not dispute that $241.51 (75%) of the funds are exempt. The use of the ORS 18.345(p)(1) does not increase the amount of the 18.385 exemption (which is $241.51). Rather, it applies a different, separate exemption to funds which are not exempt. *Compare, e.g.* ORS 18.345(1)(d)(A) (exempting "A vehicle") *with* ORS 18.385 (exempt funds). In any case, the Objection does not result in a loss of exemption for the asset since the amount of funds is less than the claimed ORS 18.345(p)(1) exemption.

7. To the extent that the Nike ESPP / Fidelity 3593 is a financial account, it is "an account in a financial institution." *See* ORS 18.348(1). Both the value in such account and the

**Page 2 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

holdings itself are part of William Farnum's total compensation package from his employer, Nike, Inc. – it is a form of equity compensation (and directly traceable thereto). Accordingly, the exemption for compensation paid or payable is applicable. ORS 18.385.

8.    With respect to the objection to exemption, the Nike, Inc. Stock Incentive Plan and Nike, Inc. Deferred Compensation Plan both represent part of William Farnum's compensation from his employer. The Stock Incentive Plan provides equity-based compensation for employees and "provide[s] an incentive for them to apply their best efforts on behalf of the Company." Nike, Inc. Stock Incentive Plan ¶ 1. The Nike, Inc. Deferred Compensation Plan is, as its name suggests, a deferred *compensation* plan under section 409A of the Internal Revenue Code. ORS 18.385 exempts earnings, not just payroll denominated as "wages."

9.    Both the Nike, Inc. Stock Incentive Plan and Nike, Inc. Deferred Compensation Plan are pensions. They are not *ERISA-qualified* pensions, but non-ERISA qualified pensions, fulfilling the purpose of deferred compensation for post-employment income. On information and belief, both plans are "top hat" plans; these plans are described, by the U.S. Department of Labor, as "unfunded or insured pension plans for a select group of management or highly compensated employees." U.S. Department of Labor, "Top Hat Plan Statement" (available online at https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/e-file/tophat-plan-filing-instructions). ORS 18.358 includes, in its definition of "Retirement plan" "Any pension not described in subparagraphs (A) or (B) of this paragraph granted to any person in recognition or by reason of a period of employment by or service for … any … corporation." ORS 18.358(1)(d)(C). William Farnum is a person, his participant in both plans is a result of employment for Nike, Inc., and Nike, Inc. is a corporation. Pension is not defined in ORS 18; a pension is a "regular series of payments made to a person (or the person's representatives or beneficiaries) for past services or some type of meritorious work done …". *Pension*, Black's Law Dictionary (10th ed. 2014). The ORS 18.358 exemption, unlike under the federal exemption scheme, is not limited to a retirement fund qualifying under sections

**Page 3 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code. *Compare* ORS 18.358(1)(d) *with* 11 U.S.C. § 522(b)(3)(C), (4).

10.    With respect to the Objection's assertion that Nike, Inc. Stock Incentive Plan and Nike, Inc. Deferred Compensation Plan are property of the bankruptcy estate, both are subject to a restriction on the transfer of a beneficial interest. 11 U.S.C. § 541(c)(2); Nike, Inc. Stock Incentive Plan ¶ 14(b)(i) ("Each Award shall be exercisable only by such Participant to whom the Award was granted during the Participant's lifetime, or, if permissible under applicable law, by the Participant's legal guardian or representative. No Award may be assigned, alienated, pledged, attached, sold or otherwise transferred or encumbered by a Participant (including, without limitation, except as may be prohibited by applicable law, pursuant to a domestic relations order) other than by will or by the laws of descent and distribution and any such purported assignment, alienation, pledge, attachment, sale, transfer or encumbrance shall be void and unenforceable against the Company or any other member of the Company Group; provided, that the designation of a beneficiary shall not constitute an assignment, alienation, pledge, attachment, sale, transfer or encumbrance."); Nike, Inc. Deferred Compensation Plan ¶ 9.2 ("The Company shall pay all amounts payable hereunder only to the person or persons designated by the Plan and not to any other person or entity. No part of a Participant's Account shall be liable for the debts, contracts, or engagements of any Participant, his or her Beneficiary, or successors in interest, nor shall a Participant's Account be subject to execution by levy, attachment, or garnishment or by any other legal or equitable proceeding, nor shall any such person have any right to alienate, anticipate, commute, pledge, encumber, or assign any benefits or payments hereunder in any manner whatsoever. If any Participant, Beneficiary or successor in interest is adjudicated bankrupt or purports to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any distribution or payment from the Plan, voluntarily or involuntarily, the Retirement Committee, in its discretion, may cancel such distribution or payment (or any part thereof) to or for the benefit of such Participant, Beneficiary or successor in interest in such manner as the Retirement Committee shall

**Page 4 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

direct.").

11.    With respect to the 529 Plans, the Debtors are, of course, in a *Catch-22*. Like ERISA-qualified retirement plans, which are also not property of the bankruptcy estate, 529 Plans must be disclosed on the Schedules. Here, the Trustee is technically correct as property excluded from the bankruptcy estate cannot be subject to an exemption. *See* 11 U.S.C. § 541(b)(6). The Objection, however, fails in its assertion that the 529 Plans are property of estate. 11 U.S.C. § 541(b)(6) (Property of the estate does not include … "funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program" with certain exceptions). Conversely, to the extent that the 529 Plans are property of the estate, ORS 178.345 provides an exemption. ORS 178.345(2) ("The right of a designated beneficiary to the payment of qualified higher education expenses or of an account owner to a withdrawal, payments and withdrawals made in exercise of those rights and moneys or property held within an account shall be exempt from garnishment and may not be subject to execution, attachment or any other process or to the operation of any bankruptcy or insolvency law.").

12.    With respect to the life insurance policies, the life insurance policy on the life of Minor O is owned by William Farnum and payable to Elizabeth Farnum and William Farnum. The Objection conflates the joint administration of these two bankruptcy estates with consolidation. Section 302(a) provides that spouses may file a single, joint petition. The purpose of a joint petition, as explained by Congress, is convenience: "(T)he cost of administration will be reduced, and there will be only one filing fee." House Report No. 95-595, 95th Cong. 1st Sess. (1977) 321, U.S.C.C.A.N. 1978, p. 6277. A joint case creates two separate estates, however, and "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated" in a joint case. 11 U.S.C. § 302(b). Thus, in the absence of such an order, a joint case – just as separate cases – consists of a separate estate for each spouse. *See* 11 U.S.C. 302(a); Fed. R. Bankr. P. 1015(b)(1); *see, e.g., In re Ageton*, 14 B.R. 833 (9th Cir. BAP 1981 (discussing separate estate administration).

**Page 5 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

WHEREFORE, the Debtors respectfully request that the Court DENY the Objection except with respect to the Northwestern Mutual #7012 policy.

Dated this 24th day of June, 2026.

SUSSMAN SHANK LLP


By /s/ Christopher N. Coyle
    Christopher N. Coyle, OSB No. 073501
    Attorneys for Debtors

**Page 6 of 6** – RESPONSE TO TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS